Case No. 15-10098

In the United States Court of Appeals for the Fifth Circuit

---

C.C., INDIVIDUALLY, BY AND THROUGH HIS NEXT FRIENDS, CHARLES CRIPPS AND KRISTIE CRIPPS; KRISTIE CRIPPS; CHARLES CRIPPS,

*Plaintiffs-Appellants*,

v.

HURST-EULESS-BEDFORD INDEPENDENT SCHOOL DISTRICT; SCOTT HURBOUGH; DAMON EMERY,

*Defendants-Appellees*.

---

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division

---

**BRIEF OF APPELLEES HURST-EULESS-BEDFORD INDEPENDENT SCHOOL DISTRICT, SCOTT HURBOUGH, AND DAMON EMERY**

---

Meredith Prykryl Walker
State Bar No. 24056487
Nona C. Matthews
State Bar No. 00787982
**WALSH GALLEGOS TREVIÑO RUSSO & KYLE P.C.**
105 Decker Court, Suite 600
Irving, Texas 75062
214.574.8800
214.574.8801 (facsimile)
mwalker@wabsa.com
nmatthews@wabsa.com
*Attorneys for Defendants-Appellees*

Case No. 15-10098

In the United States Court of Appeals for the Fifth Circuit

---

C.C., INDIVIDUALLY, BY AND THROUGH HIS NEXT FRIENDS, CHARLES
CRIPPS AND KRISTIE CRIPPS; KRISTIE CRIPPS; CHARLES CRIPPS,

*Plaintiffs-Appellants*,

v.

HURST-EULESS-BEDFORD INDEPENDENT SCHOOL DISTRICT; SCOTT
HURBOUGH; DAMON EMERY,

*Defendants-Appellees*.

---

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division

---

## CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Kristie Cripps | *Plaintiff-Appellant* |
| Charles Cripps | *Plaintiff-Appellant* |
| C.C. | *Minor Child of Plaintiffs-Appellants* |

| | |
|---|---|
| Scott Hurbough | *Defendant-Appellee* |
| Damon Emery | *Defendant-Appellee* |
| Hurst-Euless-Bedford Independent School District | *Defendant-Appellee* |
| Martin J. Cirkiel CIRKIEL & ASSOCIATES, P.C. | *Attorneys for Plaintiffs-Appellants* |
| Kenneth Carden CARDEN LAW OFFICE | *Attorneys for Plaintiffs-Appellants* |
| Meredith Prykryl Walker Nona C. Matthews WALSH GALLEGOS TREVIÑO RUSSO & KYLE P.C. | *Attorneys for Defendants-Appellees* |
| Allied Word Insurance Company | *Defendant-Appellee Hurst-Euless-Bedford Independent School District's insurer* |

By:   /s/Meredith Prykryl Walker
      Meredith Prykryl Walker
      State Bar No. 24056487

*Attorneys for Defendants-Appellees*

## STATEMENT OF ORAL ARGUMENT

Appellees Hurst-Euless-Bedford Independent School District, Scott Hurbough, and Damon Emery do not believe that oral argument would be helpful in this case because the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Nevertheless, if the Court desires oral argument or if oral argument is granted as to any other party, Appellees Hurst-Euless-Bedford Independent School District, Scott Hurbough, and Damon Emery request the opportunity to participate.

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................................. i

Statement of Oral Argument .................................................................... iii

Table of Contents .................................................................................. iv

Table of Authorities .............................................................................. vi

Statement of Issues................................................................................1

Statement of the Case.............................................................................3

      I.      Procedural History..............................................................3

      II.     Alleged Facts .....................................................................5

Summary of the Argument......................................................................15

Argument and Authorities......................................................................18

      I.      The Standard of Review ....................................................18

      II.     The district court did not abuse its discretion by denying
            the Cripps leave to file their Second Amended Complaint.................18

      III.    The district court did not err in declining to consider the Cripps'
            retaliation claim under Section 504 of the Rehabilitation Act...........23

      IV.    The district court did not err in dismissing the Cripps'
            procedural and substantive due process claims..................................27

            A.     The Cripps failed to plead facts establishing
                 a recognized liberty or property interest
                 protected by the Due Process Clause. .......................................28

B.    The Cripps cannot maintain a substantive due process
claim absent a recognized liberty or property interest..............31

V.    The district court did not err in dismissing
the Cripps' equal protection claims. ....................................................33

VI.    The Cripps failed to plead sufficient allegations supporting
municipal liability under 42 U.S.C. § 1983. ........................................36

VII.    Scott Hurbough and Damon Emery are entitled
to qualified immunity from the Cripps' due process
and equal protection claims...............................................................39

A.    The Cripps do not allege a violation of a
clearly established constitutional right. ....................................40

B.    The Cripps have not alleged that the actions of
Principal Hurbough and Assistant Principal Emery
were objectively unreasonable.................................................42

VIII.    The district court did not err in dismissing the Cripps'
claims under Section 504 of the Rehabilitation Act. ..........................43

IX.    The district court did not err in dismissing the Cripps'
claims under Section 504 of the Rehabilitation Act
predicated on a hostile educational environment. ...............................48

Conclusion and Prayer ..........................................................................52

Certificate of Service .............................................................................54

Certificate of Privacy Redactions and Virus Scanning...........................55

Certificate of Compliance with Rule 32(a)............................................56

# TABLE OF AUTHORITIES

SUPREME COURT CASES

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...................................................... 40, 41

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ............................................................................................... 35

*Barnes v. Gorman*, 536 U.S. 181 (2002) ................................................................. 44

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 26

*Board of County Comm'rs of Bryan County, Okla. v. Brown*,
    520 U.S. 397 (1997) ............................................................................................... 37

*Board of Regents v. Roth*, 408 U.S. 564 (1972) .................................................... 28

*Collins v. City of Harker Heights*, 503 U.S. 115 (1992) ........................... 27, 36, 37

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) ............................... 44

*Goss v. Lopez*, 419 U.S. 565 (1975) ....................................................................... 29

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ........................................................... 39

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ................................................................. 34

*Oklahoma City v. Tuttle,* 471 U.S. 808 (1989) ...................................................... 37

*Ross v. Moffitt*, 417 U.S. 600 (1974) ..................................................................... 33

*Vill. of Willowbrok v. Olech*, 528 U.S. 562 (2000) (per curiam) ........................... 33

*Washington v. Glucksberg*, 521 U.S. 702 (1997) .................................................. 28

FIFTH CIRCUIT CASES

*Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663 (5th Cir. 1981) ........ 18

*Anderton v. Tex. Parks & Wildlife Dep't*, 605 Fed. App'x 339 (5th Cir. 2015) ...... 31

*Barrett v. Indep. Order of Foresters*, 625 F.2d 73 (5th Cir. 1980) ........................ 21

*Brennan v. Stewart*, 834 F.2d 1248 (5th Cir. 1988) ........................................ 28, 31

*Conroe Creosoting Co. v. Montgomery County, Tex.*,
    249 F.3d 337 (5th Cir. 2001) ................................................................................ 31

*D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*,
    629 F.3d 450 (5th Cir. 2010) .......................................................................... 43, 44

*Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567 (5th Cir. 2002)............... 43, 49

*Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994)..................................32

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) ........................3, 18

*Gates v. Tex. Dep't of Protective & Regulatory Servs.*,
   537 F.3d 404 (5th Cir. 2008) ........................................................... 40, 42

*Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.*,
   173 F.3d 946 (5th Cir. 1999) ...............................................................25

*Gonzalez v. Ysleta Indep. Sch. Dist.,* 996 F.2d 739 (5th Cir. 1993). .......................38

*Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000) ........................42

*Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303 (5th Cir. 1987) ......................32

*Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) ...................................................40

*Kyles v. Garrett*, 222 Fed. App'x 427 (5th Cir. 2007) ...........................................34

*Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982 (5th Cir. 2014)............... 43, 44

*Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097 (5th Cir. 1979)....................21

*Linbrugger v. Abercia*, 363 F.3d 537 (5th Cir. 2004)...............................................39

*Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348 (5th Cir. 1983)...................43

*Mitsubishi Aircraft Int'l, Inc. v. Brady*, 780 F.2d 1199 (5th Cir. 1986) .................21

*Morris v. Dearborne*, 181 F.3d 657 (5th Cir. 1999)...............................................32

*Nevares v. San Marcos Consolidated Indep. Sch. Dist.*,
   111 F.3d 25 (5th Cir. 1997) .................................................................29

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001)..................................37

*Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496 (5th Cir. 2004).................20

*Puente v. Ridge*, 324 F. App'x 423 (5th Cir. 2009) .................................................35

*Simi Inv. Co. v. Harris County, Tex.*, 236 F.3d 240 (5th Cir. 2000) .......................28

*Snyder v. Trepagnier*, 142 F.3d 791 (5th Cir. 1998) ...............................................37

*Sorenson v. Ferrie*, 134 F.3d 325 (5th Cir. 1998) ...................................................40

*Stewart v. Waco Indep. Sch. Dist.*, 711 F.3d 513,
   *vacated by* 599 Fed. App'x 534 (5th Cir. 2013)....................................45

*Wallace v. County of Comal*, 400 F.3d 284 (5th Cir. 2005)...................................39

*Williams v. Bramer*, 180 F.3d 699 (5th Cir. 1999).................................................33

*Williams v. Kaufman Cty.*, 352 F.3d 994 (5th Cir. 2002).......................................39

*Wimm v. Jack Eckerd Corp.*, 3 F.3d 137 (5th Cir. 1993) .......................................18

## OTHER FEDERAL CASES

*A.P. ex rel. Peterson v. Anoka-Hennepin Sch. Dist. No. 11*,
   538 F. Supp. 2d 1125 (D. Minn. 2008)..................................................46

*C.C. v. Hurst-Euless-Bedford Indep. Sch. Dist.*, No. 4:14-CV-1042-A,
   2015 WL 2443835 (N.D. Tex. May 21, 2105) ........................... 8, 47, 51

*Doe v. Dantin*, No. 11-467, 2014 WL 2045344 (E.D. La. May 16, 2014)..............41

*Ellenberg v. N.M. Military Inst.*, 478 F.3d 1262 (10th Cir. 2007) .........................44

*K.M. v. Tustin Unified Sch. Dist.*, 725 F.3d 1088 (9th Cir. 2013)...........................44

*Liese v. Indiana River County Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012) ...........44

*Monahan v. Nebraska*, 687 F.2d 1164 (8th Cir. 1982)............................................43

*O'Brien v. DiGrazia*, 544 F.2d 543 (1st Cir. 1976) .................................................35

*Preston v. Hilton Cent. Sch. Dist.*, 876 F. Supp. 2d 235 (W.D.N.Y. 2012) ............34

*Teal v. City of Houston*, 523 F. Supp. 2d 555 (S.D. Tex. 2007)..............................37

## CONSTITUTIONAL AMENDMENTS

U.S. Const. amend. XIV, § 1 ......................................................................... 27, 33

## FEDERAL STATUTES

20 U.S.C. § 1415........................................................................................ 47, 50

29 U.S.C. § 794........................................................................................... 43, 49

## FEDERAL RULES

FED. R. CIV. P. 15 .............................................................................................18

FED. R. CIV. P. 8 ...............................................................................................24

N. DIST. OF TEX. LOCAL R. 7.1 .........................................................................22

## TEXAS STATUTES

TEX. EDUC. CODE § 11.051 ................................................................................38

TEX. EDUC. CODE § 11.151 ................................................................................38

TEX. EDUC. CODE § 37.006 ........................................................................ 30, 47

TEX. EDUC. CODE § 37.007 ........................................................................ 31, 36

TEX. HEALTH & SAFETY CODE § 481.121 ................................................................35

TEX. HEALTH & SAFETY CODE § 481.125 ................................................................35

TEX. PENAL CODE § 22.01 .......................................................................................35

TEX. PENAL CODE § 46.01 .......................................................................................36

TEX. PENAL CODE § 46.03 .......................................................................................36

## TEXAS CODES

TEX. CODE. CRIM. PROC. art. 15.27 ................................................................ 30, 47

## STATEMENT OF ISSUES

**Issue No. 1:**

The district court did not abuse its discretion by denying Appellants leave to file their Second Amended Complaint as the district court had valid reasons to deny leave.

**Issue No. 2:**

The district court did not err in declining to consider a retaliation claim under Section 504 of the Rehabilitation Act as the claim was not pled in the live pleading before the district court.

**Issue No. 3:**

The district court did not err in dismissing Appellants' procedural and substantive due process claims as Appellants failed to identify the violation of a right entitled to protection under the Due Process Clause.[1]

**Issue No. 4:**

The district court did not err in dismissing Appellants' equal protection claim as Appellants failed to plead facts showing intentional differential treatment of C.C. without a rational basis.

---

[1] While Appellants treat their procedural and substantive due process claims separately, Appellees believe that they should be considered together, and, as such, have combined the two claims into one issue for purposes of their brief.

**Issue No. 5:**

The district court did not err in dismissing Appellants' due process and equal protection claims against Hurst-Euless-Bedford Independent School District as Appellants failed to plead facts establishing municipal liability.

**Issue No. 6:**

Appellees Scott Hurbough and Damon Emery are entitled to qualified immunity from Appellants' due process and equal protection claims.

**Issue No. 7:**

The district court did not err in dismissing Appellants' claims under Section 504 of the Rehabilitation Act as Appellants failed to establish that Hurst-Euless-Bedford Independent School District intentionally discriminated against C.C.

**Issue No. 8:**

The district court did not err in dismissing Appellants' claims under Section 504 of the Rehabilitation Act predicated on a hostile educational environment as Appellants failed to establish that Hurst-Euless-Bedford Independent School District intentionally discriminated against C.C.

# STATEMENT OF THE CASE

Appellees Hurst-Euless-Bedford Independent School District ("HEB ISD" or the "District"), Scott Hurbough ("Principal Hurbough"), and Damon Emery ("Assistant Principal Emery") are providing the Court with their own Statement of the Case given the argumentative nature of Appellants' "Procedural Resume," as well as Appellants' embellished "Factual Resume."[2]

## I.    Procedural History

On August 11, 2014, Appellants C.C., Charles Cripps, and Kristie Cripps (collectively the "Cripps") appealed to the district court the decision of the Special Education Hearing Officer ("SEHO") in an underlying due process hearing. (ROA.19-51). In addition to appealing the SEHO's decision, the Cripps asserted various claims against Appellees. (ROA.40-43). On September 18, 2014, Appellees filed their respective Motions to Dismiss the Cripps' claims. (ROA.78-145). In response, on October 9, 2014, the Cripps filed their First Amended Complaint. (ROA.146-180). Shortly thereafter, on October 21, 2014, the Cripps filed a Motion to Remand the appeal of the SEHO's decision back to the SEHO for

---

[2] Appellants appear to be using this appeal as an opportunity to take a second bite at the proverbial apple by embellishing their previously alleged facts and by adding facts that the district court did not consider in ruling on Appellees' respective Motions to Dismiss. This is particularly evidenced by the lack of citations to the Record on Appeal contained in Appellants' "Factual Resume." The operative facts for consideration by the Court are those contained in Appellants' First Amended Complaint—not the new and embellished facts upon which Appellants now rely. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

reconsideration. (ROA.182-280).

On October 23, 2014, Appellees filed their respective Motions to Dismiss the Cripps' First Amended Complaint. (ROA.281-349). Appellees then filed their Response to the Cripps' Motion to Remand on November 4, 2014. The district court denied the Cripps' Motion to Remand on November 6, 2014. (ROA.350-368). On November 20, 2014, the Cripps filed a Motion for Leave to file their Second Amended Complaint. (ROA.374-414). The same day, the district court ordered the Cripps to file an annotated and clean copy of their Second Amended Complaint with the district court by November 24, 2014. (ROA.429-430). The district court also ordered that Appellees file an expedited response to the Motion for Leave to file their Second Amended Complaint no later than November 26, 2014. (ROA.429-430).

On November 21, 2014, the Cripps sought a Motion for Extension of Time to file the annotated and clean copy of their Second Amended Complaint, which was granted the same day. (ROA.431-433). On December 1, 2014, the Cripps filed their responses to Appellees' respective Motions to Dismiss the First Amended Complaint. (ROA.441-519). The same day, the Cripps filed their annotated and clean copy of their Second Amended Complaint, along with a new Motion for

Leave.[3] (ROA.520-601). On December 3, 2014, Appellees filed their Response opposing the Cripps' Motion for Leave. (ROA.602-608). On December 10, 2014, Appellees filed their respective Reply Briefs in support of their Motions to Dismiss Appellees' First Amended Complaint. (ROA.609-629).

On December 11, 2014, the district court denied the Cripps' Motion for Leave to file their Second Amended Complaint. (ROA.630-633). On December 22, 2011, the Cripps filed a motion requesting that the district court reconsider its order denying the Cripps leave to file their Second Amended Complaint, which was denied on January 8, 2015. (ROA.645-656, 667-674). In the interim, the district court severed the Cripps' appeal of the SEHO's decision from their other claims against Appellees. (ROA.657-660). On January 8, 2015, the district court granted Appellees' respective Motions to Dismiss, dismissed all of the Cripps' remaining claims, and entered a final judgment in the matter. (ROA.675-690). On February 5, 2015, the Cripps filed their Notice of Appeal appealing the district court's Order dismissing their claims. (ROA.691-694).

## II.   Alleged Facts[4]

In the fall of 2012, C.C. was a twelve year old boy who attended Bedford Junior High. (ROA.152). On September 18, 2012, C.C. was deemed to be a student

---

[3] Appellants actually filed an annotated and clean copy of what they referred to as the Third Amended Complaint, which was inappropriate as they had not yet been granted leave to file the Second Amended Complaint. (ROA.523).

[4] The alleged facts set forth by Appellees are obtained directly from Appellants' First Amended Complaint. (ROA.146-180).

with a disability and eligible for services under Section 504 of the Rehabilitation Act ("Section 504"). (ROA.155). After receiving a number of disciplinary referrals, the Cripps withdrew C.C. from the District alleging that they feared C.C. was being harmed by HEB ISD's actions. (ROA.155). On November 12, 2012, the Cripps and the District attended a mediation wherein HEB ISD agreed to provide C.C. with a Full and Individual Evaluation ("FIE"), which was to be completed by December 19, 2012. (ROA.156). The Cripps assert that HEB also agreed to provide them with a "Parent Liaison" to help facilitate communication between the Cripps and school personnel, as well as to provide an "Adult Mentor" for C.C. (ROA.156).

The Cripps allege that HEB ISD also agreed to provide a "report" to the Cripps within five days of the Admission, Review, and Discharge ("ARD") committee meeting set for January 15, 2013.[5] (ROA.156). The Cripps assert that the FIE report was not provided as agreed, and failed to include or satisfy all the matters contemplated in the "agreement."[6] (ROA.156). In addition, the Cripps allege that while the District agreed to not consider any behavioral infractions while completing the FIE, HEB ISD "not only continued consider (sic) behavioral infractions during the assessment period" and "actually caused them." (ROA.156).

---

[5] The Cripps did not specify what "report" they alluded to in the First Amended Complaint, but Appellees assume the Cripps were referring to the FIE report.

[6] Again, the Cripps did not specify what "agreement" they alluded to in the First Amended Complaint, but Appellees assume the Cripps were referencing any agreement reached at mediation in November 2012.

The Cripps assert that a second agreement was reached, and the ARD committee meeting was reconvened on January 30, 2013, at which time C.C. was found to be eligible for special education and related services as a student with a Learning Disability, Other Health Impairment as a result of his Attention Deficit Hyperactivity Disorder ("ADHD"), and problems in Written Expression. (ROA.156-157).

The Cripps assert that during an unspecified period of time, C.C. continued to be "written up" for a number of rules infractions. (ROA.157). The Cripps allege that C.C. recalls being followed by Principal Hurbough while C.C. was at school, which included Principal Hurbough allegedly peering at C.C. through the glass window of a door. (ROA.151-152, 157). On February 11, 2013, Assistant Principal Emery met with C.C. regarding referrals from the previous week. (ROA.157). One of the referrals pertained to C.C. asking a girl in class "if she was making porn." (ROA.157). The Cripps assert that Principal Hurbough contacted the girl's parents to inquire into whether they wanted to file felony sexual harassment charges against C.C., but the girl's parents refused. (ROA.157).

On February 14, 2013, while C.C. was in his science class with Coach Shackelford, C.C. left his seat to get a pencil from the front desk. (ROA.157). When C.C. realized there were no pencils available, he began walking to another group of students at a different table. (ROA.157). The Cripps assert that Ms.

McNosky, who had been standing at the rear of the classroom, told C.C. to return to his seat.[7] (ROA.157). The Cripps allege that Ms. McNosky started walking towards C.C. and that she continually moved directly into his path until they were too close to one another to avoid contact and bumped into one another. (ROA.157-158). The Cripps assert that this was not the first time such a situation had occurred with Ms. McNosky. (ROA.158). Around the same time, the Cripps allege that C.C. told his therapist that he overheard two teachers commenting that they "could get him for destroying public property," in response to C.C. tapping his pen against a wall.[8] (ROA.158). C.C. was eventually charged with two Class C Misdemeanors for assault stemming from the contact with Ms. McNosky. (ROA.159). While the incidents occurred in February 2013, C.C. was charged in March 2013.

---

[7] Because the Cripps failed to identify Ms. McNosky, Appellees represent to the Court that Ms. McNosky is Dee McNosky, a special education inclusion teacher at Bedford Junior High.

[8] While Appellees will not waste the Court's judicial resources identifying each embellishment and addition to the facts made by Appellants as the Court is fully capable of reviewing the First Amended Complaint, the Cripps' representation regarding this alleged incident is particularly egregious. The Cripps First Amended Complaint specifically stated that C.C. "overheard two teachers commenting, when they say [sic] him tapping a pen against the wall, that now they '. . . could get him for destroying public property.'" (ROA.158). In what appears to be an attempt to downplay C.C.'s conduct while simultaneously highlighting their conspiracy theory, the Cripps now assert to the Court that C.C. was rubbing—not tapping—a pencil—not a pen—against the wall and that C.C. overheard the teachers say that they ". . . could *now* get him for destroying school property." (Appellants' Brief, ¶24). What takes this from being egregious to an actual misrepresentation is the fact that the Cripps are fully aware of C.C.'s actual testimony on this matter during the underlying due process hearing as noted by the district court: "[C.C.'s] testimony at the hearing was that he was told by staff that he was destroying school property by tapping a pen on the wall, not that he overheard teachers conspiring to have him kicked out of school for such action." *C.C. v. Hurst-Euless-Bedford Indep. Sch. Dist.*, No. 4:14-CV-1042-A, 2015 WL 2443835, at *10 (N.D. Tex. May 21, 2105). While Appellees recognize that the Court must take all well-pleaded facts as true for purposes of the Motion to Dismiss, Appellees hardly consider facts the Cripps know to be contradicted by C.C.'s sworn testimony to be well-pleaded.

(ROA.159).

On February 19, 2013, C.C.'s keyboarding teacher, Ms. Bowen, reported that C.C. was extremely disruptive during class that day. (ROA.158). C.C. was rough housing with students, rolling around the classroom in a chair, belching in a student's face, and yelling across the room that "another student's penis was so small that you couldn't even see it." (ROA.158). Assistant Principal Emery spoke with the parents of the boy to whom the penis comment was aimed and, as the Cripps allege, attempted to have the student's parent file felony sexual harassment charges against C.C., but they refused. (ROA.159). Assistant Principal Emery also investigated the incident as one involving sexual harassment. (ROA.158-159). During the investigation, Assistant Principal Emery learned that C.C. had photographed another student in the bathroom a few days earlier, and he initiated an investigation into that matter. (ROA.158-159).

As part of his investigation, Assistant Principal Emery took a number of statements and interviewed C.C. (ROA.159). On the day in question, the Cripps assert that C.C. followed R.L. into the bathroom because R.L. often did crazy and funny things at school. (ROA.159). The Cripps allege that R.L. entered the bathroom and proceeded to the third stall, which had no door. (ROA.159). R.L. allegedly giggled, which supposedly signaled to C.C. that something funny was about to happen. (ROA.159). R.L. then took his pants down and sat on the toilet.

(ROA.159). The Cripps assert that R.L. laughed and made exaggerated grunting noises, and that both N. (another boy in the bathroom) and C.C. took pictures of R.L. (ROA.159-160). The Cripps allege that R.L. looked at the picture and continued to laugh and, at one point, held up a piece of toilet paper smeared with "poop." (ROA.160). R.L. gave a written statement about the incident wherein he told C.C. not to show anyone the picture. (ROA.160).

The Cripps assert that despite having evidence to the contrary, Assistant Principal Emery determined that C.C. did not have R.L.'s consent to the take the pictures, and that C.C. intended to invade R.L.'s privacy. (ROA.160). Assistant Principal Emery concluded that the taking of the pictures of R.L. in the bathroom was a Title V felony warranting suspension from school. (ROA.160). School Resource Officer Eberling also completed a report, which the Cripps assert "basically reiterated" what Assistant Principal Emery had reported with the exception that only one student in the bathroom saw any pictures and that C.C. took the pictures because several students told him to do so. (ROA.160). The Cripps assert that C.C. took the pictures "because there were several students telling him to take the pictures, so he did (due to peer pressure)." (ROA.160). The Cripps allege that Assistant Principal Emery spoke with R.L.'s father in an effort to have charges filed against C.C. (ROA.160). Charges were filed against C.C. (ROA.160-161). The Cripps assert that the case was reviewed by Officer Ripley

with the local police department, who notified the school that C.C.'s case was referred to the Tarrant County Juvenile Probation Department as a felony. (ROA.161).

On March 4, 2013, a manifestation determination review ("MDR") was held. (ROA.161). The Cripps assert that the MDR committee was appointed by Principal Hurbough, who also participated, and the committee was chaired by Assistant Principal Emery. (ROA.161). The Cripps allege that the purpose of the MDR committee was to determine whether C.C.'s behaviors in question were caused by or had a direct and substantial relationship to his disabilities, and, if so, whether the District failed to implement C.C.'s Individualized Education Plan such that C.C.'s conduct was a direct result of the failure. (ROA.161). The Cripps assert that it was noted during the MDR committee meeting that C.C. took the picture of R.L. in the bathroom because he was "copycatting" another student. (ROA.161).

The Cripps allege that during the MDR committee meeting they asserted that C.C.'s conduct in taking a picture of R.L. in the bathroom was related to C.C.'s disabilities and behaviors that gave rise to the incident in the first instance. (ROA.161-162). The Cripps assert that the members of the MDR committee from the District reviewed the Diagnostic and Statistical Manual of Mental Disorders-IV for ADHD and determined that C.C.'s conduct in taking a picture of R.L. in the bathroom was not a manifestation of his ADHD or any other disabilities.

(ROA.162). The Cripps allege that during the MDR committee meeting HEB ISD's attorney stated that C.C.'s conduct was a new behavior that was not previously documented and that had not previously occurred, that C.C. violated R.L.'s privacy, that C.C.'s behaviors were not related to his allergies, and that the only behavior the MDR committee could consider was C.C.'s conduct in taking pictures of R.L. in the bathroom. (ROA.162-163). The Cripps disagreed with the alleged comments by the District's attorney. (ROA.162, 163). The Cripps assert that there was also a disagreement over whether C.C.'s conduct rose to the level of a crime. (ROA.163). The MDR committee ultimately determined that C.C.'s conduct was not a manifestation of his ADHD or other disabilities and assigned him to the District's disciplinary alternative education program ("DAEP") for 60 days. (ROA.163).

The Cripps assert that on March 21, 2013, Assistant Principal Emery began a follow-up investigation regarding the report that another student was in the bathroom at the time C.C. took pictures of R.L. (ROA.163). The Cripps allege that the interviews revealed that one student reported that he saw another student besides C.C. take a picture of R.L., one student reported that R.L. wiped himself and held up the toilet paper smeared with "poop," and three students thought it was funny that R.L. would use a bathroom stall without a door. (ROA.163). Following the follow-up investigation, Assistant Principal Emery maintained that C.C. invaded R.L.'s privacy and that R.L. did not provide consent for C.C. to take any

pictures. (ROA.163). The Cripps allege that on April 4, 2013, the Tarrant County Juvenile Justice authority informed the District's attorney that it would not be prosecuting the case against C.C. (ROA.164).

On April 11, 2013, C.C.'s ARD committee met to discuss the Cripps' request that C.C. be provided with home bound services. (ROA.164). The Cripps allege that the notes from the MDR on March 4, 2013, were reviewed, but that the ARD committee maintained that C.C.'s actions were not a manifestation of a disability. (ROA.164). The Cripps assert that the ARD committee failed to consider the changed circumstances, specifically that the felony and misdemeanor charges against C.C. had been dropped. (ROA.164). The Cripps allege that the same held true at C.C.'s ARD committee meetings held on May 20, 2013, and August 29, 2013. (ROA.164). At the ARD committee meeting on August 29, 2013, the Cripps wanted the ARD committee to review C.C.'s DAEP assignment, but the Cripps assert that HEB ISD's attorney informed the Cripps that the refusal to prosecute C.C. had no bearing on C.C.'s DAEP assignment. (ROA.164).

The Cripps subsequently filed a complaint against HEB ISD with the Office of Civil Rights (the "OCR") asserting that C.C. was the victim of retaliation as the incident involving C.C. taking pictures of R.L. in the bathroom was prosecuted as a felony. (ROA.164-165). The Cripps allege that the OCR found that C.C. established a *prima facie* case of retaliation. (ROA.165). The Cripps assert that

Assistant Principal Emery misled the OCR investigator when he stated that the police officer who met with R.L.'s parents "closed the deal" for filing charges against C.C. and that he did not know whether charges had been filed against C.C. (ROA.165). The Cripps allege that Assistant Principal Emery also told the OCR investigator that he learned of the pictures taken by C.C. when he was investigating an incident wherein C.C. "had sexually harassed another student" when making fun of the size of the student's penis. (ROA.165). The OCR ultimately determined that HEB ISD had legitimate, non-discriminatory reasons for punishing C.C. (ROA.165). On January 13, 2014, the Cripps filed an Original Petition and Request for a Due Process Hearing in accordance with the Individuals with Disabilities Education Improvement Act (the "IDEA"). (ROA.165-166).

# SUMMARY OF THE ARGUMENT

The district court did not abuse its discretion in denying the Cripps leave to file their Second Amended Complaint as the district court had valid and substantial reasons for determining that allowing leave would cause undue delay and would unduly burdensome Appellees, while recognizing the Cripps' failure to take advantage of their previous amendment. Granting leave is not automatic, and falls solely to the discretion of the district court. The district court considered the appropriate factors, which weighed in favor of denying leave. The Cripps failed to establish for the Court that the district court abused its discretion in this regard.

The district court also did not err in declining to consider the Cripps' retaliation claim under Section 504 as the Cripps did not plead such a claim in their First Amended Complaint. The mere fact that the Cripps pled facts sounding in retaliation does not translate into the assertion of a cause of action. This is particularly true when the Cripps' Section 504 cause of action was devoid of any mention of a retaliation claim; instead, their Section 504 claim focused solely on the creation of a hostile educational environment and a disagreement over compliance with the IDEA. There simply was no error by the district court in declining to consider a retaliation claim that the Cripps' never pled.

The district court did not err in dismissing the Cripps' procedural and

substantive due process claims against Appellees as the Cripps failed to identify any property interest or liberty interest entitled to protection under the Due Process Clause. Moreover, any attempt by the Cripps to establish that Appellees engaged in "conscience shocking" behavior fails absent a protected property or liberty interest. The Cripps' equal protection claims also fail as the Cripps did not identify similarly situated comparators. More specifically, none of the comparators identified by the Cripps invaded a student's privacy by photographing that student using the bathroom. The Cripps' First Amended Complaint also was devoid of any factual allegations establishing that there was no rational basis for the differences in treatment between C.C. and the identified comparators.

Moreover, with respect to HEB ISD, the Cripps failed to identify an official policy, practice, or custom adopted by the District's Board of Trustees with deliberate indifference that caused the alleged violation of their rights under the Due Process Clause and the Equal Protection clause. Absent municipal liability, the Cripps' claims cannot succeed. Likewise, the Cripps failed to address Principal Hurbough and Assistant Principal Emery's assertion that they are entitled to qualified immunity from the Cripps due process and equal protection claims. None of the facts contained in the First Amended Complaint establish that Principal Hurbough and Assistant Principal Emery would understand that their actions violated the Cripps' constitutional rights, or that they acted in an objectively

unreasonable manner in declining to reassess C.C.'s assignment to the DAEP or in declining to punish every student who engages in misconduct in the same manner.

Finally, the district court did not err in dismissing the Cripps' claims under Section 504, including their hostile educational environment claim, as the Cripps' First Amended Complaint is devoid of factual allegations giving rise to an inference that C.C. was discriminated against solely because of his disabilities. While the Cripps rely on the "professional bad faith or gross misjudgment" standard to establish their Section 504 claims, the District contends this is the improper standard as their claims are not predicated on a disagreement over compliance with the IDEA. But even when this standard is applied, the Cripps' Section 504 claims still fail as the Cripps have not alleged any facts that the District's employees have failed to accommodate C.C. in a manner that gives rise to bad faith or gross misjudgment. Moreover, contrary to the Cripps' position, the fact that C.C. has disabilities does not transform every disciplinary decision by the District into an actionable Section 504 claim.

## ARGUMENT AND AUTHORITIES

### I.     The Standard of Review

The district court's denial of the Cripps' Motion for Leave to file their Second Amended Complaint is reviewed for an abuse of discretion.[9] The Court's review of the district court's dismissal of the Cripps' claims under Rule 12(b)(6) is *de novo*.[10]

### II.    The district court did not abuse its discretion by denying the Cripps leave to file their Second Amended Complaint.

The Federal Rules of Civil Procedure provide that a pleading may be amended once, as a matter of course, and thereafter by leave of court.[11] While leave to amend "shall be freely given when justice so requires," the granting of leave "is by no means automatic."[12] "In deciding whether to grant leave . . . the district court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment."[13] Given that these factors way in favor of denying the Cripps leave to amend, the district court did not abuse its discretion in that regard.

---

[9] *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

[10] *Dorsey*, 540 F.3d at 338.

[11] FED. R. CIV. P. 15(a).

[12] *Id.*; *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981).

[13] *Wimm*, 3 F.3d at 139.

On November 20, 2014, the Cripps sought leave from the Court to file their Second Amended Complaint. (ROA.374-414). While the Cripps did not specifically identify their reasons for seeking leave, they footnoted that they brought forth their amended complaint in order to assert a claim for retaliation under Section 504 as they failed to assert a cause of action for such a claim despite pleading factual allegations in support thereof. (ROA.381-382). The district court ultimately denied the Cripps leave to amend, finding that it would unduly prejudice Appellees and lead to undue delay of the matter. (ROA.630-631). The district court also noted that the Cripps had failed to take advantage of earlier opportunities to amend their complaint.[14] (ROA.632-633).

Nevertheless, the Cripps argue that the district court abused its discretion in denying leave to amend because "the issue about 'retaliation' was clearly before [HEB ISD]" so the District could not be prejudiced in having to file a *third* motion to dismiss to address the issue, particularly because HEB ISD relied on factual allegations sounding in retaliation to support the dismissal of the Cripps' Section 504 claim.[15] (Appellants' Brief, ¶58). What the Cripps fail to recognize is that their

---

[14] In its Order denying the Cripps' Motion for Reconsideration, the district court reiterated its reasoning for denying leave to amend, further explaining that the Cripps' request for leave to amend was futile. (ROA.672-673).

[15] Notably, the Cripps did not provide any briefing to the Court on the prejudice to Principal Hurbough and Assistant Principal Emery, nor any briefing on the district court's findings that leave to amend would cause undue delay, that the Cripps failed to take advantage of earlier opportunities to amend their complaint, and that the Cripps' request for leave to amend was futile; instead, the Cripps focus solely on undue prejudice to the District. The Cripps' failure to

argument supports the district court's denial of leave to amend as the Cripps failed to take advantage of an earlier opportunity to amend despite notice of their failure to assert a cause of action for retaliation under Section 504.[16]

A review of the District's Motion to Dismiss the Cripps' original Complaint reflects an argument that C.C. was not discriminated against because of his disability; rather the Cripps pled that the District took the alleged actions against C.C. in retaliation for the Cripps' advocacy. (ROA.99). Nowhere in the District's Motion to Dismiss, however, did HEB ISD address a retaliation claim as none was pled. (ROA.81-101). The Cripps subsequently filed their First Amended Complaint, but at no time did the Cripps add a cause of action for retaliation under Section 504. (ROA.146-180). HEB ISD again moved to dismiss the Cripps' claims as C.C. was not discriminated against because of his disability; rather the Cripps' factual allegations sounded in retaliation. (ROA.348). While the Cripps had notice as of September 18, 2014, that they failed to assert a retaliation claim under Section 504, as the District never responded to such a claim, it was not until

---

brief these additional bases for denial of leave constitutes waiver of those particular issues on appeal. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004).

[16] The Cripps also appear to assert that the district court's order severing the appeal of the SEHO's decision and subsequent order to file an amended complaint in that matter is somehow inconsistent with the district court's denial of the Cripps' request for leave to amend. A review of the district court's order severing the matter reflects that the district court ordered the Cripps to file an amended complaint "limit[ing] [their] allegations to those relevant to the appeal" of the SEHO's decision. (ROA.660). While the Cripps try to connect the severance order to the denial of leave to support their argument that the district court abused its discretion, one has nothing to do with the other.

November 20, 2014, that they attempted to assert the claim—after Appellees already had filed two motions to dismiss. (ROA.374-414). In seeking leave to amend, the Cripps failed to proffer any reasons why such a claim could not have been asserted earlier.[17]

Contrary to the Cripps' argument, the District is not trying "to have it both ways." (Appellants' Brief, ¶58). The Cripps pled factual allegations that sounded in retaliation, but they did not assert a retaliation claim in their Complaint or First Amended Complaint. (ROA.43, 175). It is not the District's responsibility to read a cause of action into a pleading where none was pled. In fact, it is axiomatic that the purpose of allowing one amended pleading as a matter of course is to allow parties to cure deficiencies in their pleadings identified in a motion to dismiss. HEB ISD's Motion to Dismiss the Cripps' claims put them on notice of a deficiency. The Cripps failed to take steps to timely cure that deficiency.

The Cripps' lack of diligence in seeking to amend to add a retaliation claim under Section 504, also lends considerable support to the district court's finding

---

[17] *See Mitsubishi Aircraft Int'l, Inc. v. Brady*, 780 F.2d 1199, 1203 (5th Cir. 1986) (stating that failure to urge a claim which is "usually apparent at the outset of a case . . . strongly suggests either a lack of diligence . . . or a lack of sincerity"); *Barrett v. Indep. Order of Foresters*, 625 F.2d 73, 75 (5th Cir. 1980) (affirming denial of leave to amend, although bad faith and dilatory motive not found, where "amendment sought to add several new parties and additional counts," and "[e]ven though the motion was not filed until nearly ten months after the original complaint, there would appear to be no matters . . . which could not have been raised initially"); *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979) (upholding denial of leave to amend, although bad faith and dilatory motive not found, where "all of the facts relevant to the proposed amendment were known to the [movant] at the time she filed her original complaint").

that the Second Amended Complaint would cause undue delay. The Cripps filed their Complaint on August 11, 2014. (ROA.19-51). Appellees filed their respective Motions to Dismiss on September 18, 2014. (ROA.78-145). On October 9, 2014—the deadline to respond to the Motions to Dismiss—the Cripps filed their First Amended Complaint.[18] (ROA.146-180). On October 23, 2014, Appellees moved to dismiss the First Amended Complaint. (ROA.281-349). On November 20, 2014—seven days after their deadline to respond to the Motions to Dismiss—the Cripps sought leave to file their Second Amended Complaint.[19] (ROA.374-414).

In other words, over three months after the Cripps filed their Complaint, they had yet to respond to the merits of Appellees' respective Motions to Dismiss; instead they sought leave to add a claim that should have been pled in the Complaint.[20] In fact, it took the Cripps over two months to request leave to add their Section 504 retaliation claim despite clear knowledge of their pleading deficiency as early as September 18, 2015.[21] Moreover, the Cripps' proposed

---

[18] *See* N. Dist. of Tex. Local R. 7.1(e).

[19] *See id.*

[20] Appellees would be remiss if they did not note for the Court that the Cripps' proposed Second Amended Complaint contained numerous factual allegations that they previously had failed to plead, including facts allegedly supporting the retaliation claim they sought leave to assert, all of which could have been pled in the Complaint or First Amended Complaint. (ROA.523-560).

[21] This Court is no stranger to the Cripps' delay tactics. This matter has been pending since February 2015. (ROA.691). The Cripps' appellant brief originally was due on April 27, 2105, but the Cripps requested an extension. The request was granted, and the Cripps' briefing deadline was extended to May 12, 2015. On May 11, 2015, despite having had ample time to review the record, the Cripps filed another request for an extension of their briefing deadline as one document was missing from the Record on Appeal. On May 24, 2015, the Cripps' counsel contacted Appellees' counsel regarding a certificate of conference on a Motion to Consolidate,

Second Amended Complaint continued to assert claims that were not viable, including a conspiracy claim that the Cripps have now abandoned. (ROA.554-555; Appellants' Brief, ¶13 n.3).

The Cripps' request for leave to amend illustrates why the granting of leave is not automatic—it should not be used a tactic to avoid responding to the merits of another party's motion to dismiss. The district court rightfully recognized that the Second Amended Complaint would come with a third round of Motions to Dismiss by HEB ISD, Principal Hurbough, and Assistant Principal Emery. (ROA.673). Instead of granting the Cripps leave, the district court opted to conserve party and judicial resources as granting leave to amend would cause further undue delay and undue prejudice, particularly in light of the Cripps' failure to take advantage of their previous opportunity to replead.[22] (ROA.632, 672). The Court should find that the district court did not abuse its discretion in this regard.

## III. The district court did not err in declining to consider the Cripps' retaliation claim under Section 504 of the Rehabilitation Act.

There is no dispute that the Cripps' First Amended Complaint did not contain a cause of action for retaliation under Section 504; instead, the Cripps

---

but nevertheless waited until June 11, 2015—their third briefing deadline—to file the Motion to Consolidate and skirt the briefing deadline once again.

[22] The Cripps fail to address Appellees' argument, which the district court found persuasive, that granting leave to file a third complaint would be a waste of judicial and party resources as Appellees would have had to file their third respective Motions to Dismiss to address claims that were not viable, resulting in Principal Hurbough and Assistant Principal Emery filing their third respective Motions to Dismiss when the factual allegations against them essentially remained unchanged. (ROA.607, 672). Appellees continue to urge this argument on appeal.

simply asserted factual allegations sounding in retaliation. Nevertheless, the Cripps would have the Court find that the district court erred in failing to consider a claim they never pled.[23] Apparently, the Cripps believe that HEB ISD has to divine their intent to assert a retaliation claim against the District based on their factual allegations despite not actually pleading or asserting a retaliation claim.[24] A complaint containing factual allegations sounding in retaliation, however, does not a retaliation claim make.[25]

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[26] This Court has found that "a complaint will be deemed inadequate [under Rule 8(a)] only if it fails to (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or

---

[23] The Cripps do not identify the standard of review on this issue for the Court. Appellees posit that the standard of review would be an abuse of discretion as the issue raised by the Cripps is in line with the district court's denial of leave to amend.

[24] The Cripps question how the District can "state on one hand the relation claim was not in C.C.'s live pleading yet on another hand, state it was?" (Appellants' Brief, ¶63). To be clear, HEB ISD never recognized or conceded that the Cripps asserted a retaliation claim under Section 504; rather the District noted that the Cripps pled factual allegations sounding in retaliation. (ROA.99, 348). HEB ISD's position on these issues is not inconsistent.

[25] Both the Complaint and First Amended Complaint asserted "Claims for Relief Pursuant to the Rehabilitation Act of 1973." (ROA.42, 174). Therein, the Cripps specifically identified their claims for violation of Section 504—creating a hostile educational environment and a claim predicated on a disagreement over compliance with the IDEA. (ROA.43, 175). Nowhere do the Cripps state that they were seeking relief for retaliation in violation of Section 504. (ROA.43, 175).

[26] FED. R. CIV. P. 8(a).

permit inferences to be drawn that these elements exist."[27] The Cripps' First Amended Complaint did neither with respect to a Section 504 retaliation claim as they never pled the claim. As such, the Cripps' reliance on Rule 8(a) and Rule 12(b)(6) for the proposition that the district court should have considered a retaliation claim is misplaced. The *General Star* case is instructive.

In *General Star*, the plaintiff argued that the facts contained in its first amended complaint were sufficient to state a claim of negligence through equitable subrogation.[28] In contrast, the defendants argued that paragraph 21 of the first amended complaint was deficient because it failed to state an essential element of the plaintiff's claim.[29] This Court ultimately rejected the district court's ruling that the plaintiff failed to state a claim under Rule 12(b)(6).[30] What is not apparent from the Court's opinion, however, is that paragraph 21 was asserted under a heading entitled "First Cause of Action—Equitable Subrogation."[31] In other words, there was no question that the plaintiff asserted an equitable subrogation claim; instead, the question presented was whether the plaintiff's factual allegations supported such a claim.

Unlike the plaintiff in *General Star*, the Cripps never asserted a claim for retaliation under Section 504 in their First Amended Complaint. There was not

[27] *Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.*, 173 F.3d 946, 950 (5th Cir. 1999).
[28] *Id.*
[29] *Id.* at 951.
[30] *Id.*
[31] *See* Civ. Action No. 4:97-cv-0525, Dkt. 6, p.6.

even an attempt to offer "labels and conclusions" or a "formulaic recitation of the elements of [the] cause of action;" instead they alleged facts sounding in retaliation under their "Statement of Facts," but confined their Section 504 claims to creating a hostile educational environment and a disagreement over compliance with the IDEA.[32] (ROA.26-40, 43, 154-170, 175). The Cripps are not proceeding *pro se*. They have been and continue to be represented by counsel. While the Court might liberally construe a *pro se* complaint in order to identify causes of action not pled that could be supported by the factual allegations contained in a complaint, no such deference is given to parties represented by counsel. Nor is it HEB ISD's responsibility to identify causes of action that the Cripps could have asserted based on their factual allegations.

More to the point, simply pleading factual allegations sounding in retaliation—without more—is not adequate under Rule 8(a) to assert a specific claim for retaliation.[33] Essentially, what the Cripps are asking the Court to do is to infer from their factual allegations that they *meant* to assert a claim for retaliation and, as such, properly pled such a claim. Aside from not meeting the pleading standards under Rule 8(a), the District can imagine multiple scenarios where factual allegations give rise to a cause of action, but the plaintiff fails—

---

[32] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[33] Likewise, whether the Cripps pled "enough facts to state a claim to relief that is plausible on its face" is inapposite to the analysis because a retaliation claim was never pled. *Id.* at 570.

inadvertently or otherwise—to assert the cause of action.[34] Inferring a cause of action where none was pled places Appellees—and all other defendants—in the position of discerning what causes of action could have been pled, while simultaneously allowing the Cripps—and all other plaintiffs—to retroactively identify claims when it becomes apparent that their properly pled claims cannot survive. Given this incongruous outcome, the Court should find no error in the district court's decision to decline to consider a retaliation claim not contained in the First Amended Complaint—the live pleading before the district court.

## IV.    The district court did not err in dismissing the Cripps' procedural and substantive due process claims.[35]

The Fourteenth Amendment to the United States Constitution forbids government conduct that deprives "any person of life, liberty, or property without due process of law."[36] As written, the Due Process Clause only guarantees fair procedures.[37] Nevertheless, the Supreme Court has interpreted the Due Process

---

[34] For example, a plaintiff could plead facts supporting a Section 504 claim and a claim under the Americans with Disabilities Act, but only assert a cause of action under Section 504. Likewise, a plaintiff could plead facts supporting a claim under Title IX and a violation of the plaintiff's constitutional right to bodily integrity, but only assert a cause of action under Title IX. In neither situation does the defendant have a duty to highlight for the plaintiff his failure to plead a claim supported by the plaintiff's factual allegations.

[35] While HEB ISD moved to dismiss the Cripps' due process and equal protection claims in accordance with Rule 12(b)(6), the Cripps failed to respond to the District's Motion to Dismiss on these grounds; instead, the Cripps' response brief focused solely on their claims under Section 504. (ROA.510-517). Despite not briefing these issues for the district court, the Cripps now seek to appeal the district court's dismissal of their due process and equal protection claims against HEB ISD.

[36] U.S. Const. amend. XIV, § 1.

[37] *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

Clause to include a substantive component "protect[ing] against government interference with certain fundamental rights and liberty interests" regardless of the procedures employed.[38] To succeed on their due process claim, whether procedural or substantive, the Cripps must at a minimum establish a legitimate claim of entitlement to a property or liberty interest that was violated by Appellees.[39]

### A.    The Cripps failed to plead facts establishing a recognized liberty or property interest protected by the Due Process Clause.

Despite the threshold requirement of establishing an interest protected by the Due Process Clause, there was a wholesale failure by the Cripps to identify a property or liberty interest of which they were deprived in violation of the Due Process Clause; rather the Cripps assert that the District's "failure to do [sic] address this changing circumstance [the Juvenile Justice Authorities decision to not prosecute C.C.] rises to constitutional proportions."[40] (Appellants' Brief, ¶65). The Cripps, however, failed to provide the Court with any case law suggesting that C.C. has a liberty or property interest in having HEB ISD review his assignment to the DAEP for conduct occurring on school property following a decision by an outside agency not to prosecute C.C. for his actions.

---

[38] *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

[39] *Board of Regents v. Roth*, 408 U.S. 564, 569-578 (1972); *Simi Inv. Co. v. Harris County, Tex.*, 236 F.3d 240, 249-50 (5th Cir. 2000); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988).

[40] Neither Charles Cripps nor Kristie Cripps has asserted the violation of any constitutional right on their behalf. Their arguments relate solely to C.C.'s alleged constitutional rights. In a related vein, the Cripps' arguments regarding an alleged violation of C.C.'s due process rights do not implicate Principal Hurbough or Assistant Principal Emery.

It is undisputed that C.C.'s legitimate entitlement to a public education is a property interest that is entitled to protection under the Due Process Clause.[41] Nevertheless, the Fifth Circuit has made clear that a student's transfer to a DAEP does not violate any protected property or liberty interest.[42] If the transfer of C.C. to a DAEP does not implicate any liberty or property interest protected by the Due Process Clause, then it follows that C.C. has no protected property or liberty interest in being returned to the regular education setting.

The Cripps assert that Appellees' argument and the district court's analysis "misses the mark" because "the procedures contested were (again) not those that put C.C. into the DAEP, but rather the failure of any procedures to get him out." (Appellants' Brief, ¶67). The Cripps' argument reflects a fundamental misunderstanding of the Due Process Clause because in order to be entitled to "procedures to get [C.C.] out," the Cripps must first establish that he was being deprived of a protected property or liberty interest. To that end, the Cripps argue that "[s]tate law supports C.C.'s position that this changing circumstance should be addressed and acted upon by school district officials."[43] (Appellants' Brief, ¶68). But there is no such support to be found in state law.

---

[41] *Goss v. Lopez*, 419 U.S. 565, 574-76 (1975).

[42] *Nevares v. San Marcos Consolidated Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997).

[43] While Appellees disagree with the Cripps' interpretation of the relevant provisions of the Texas Education Code, Appellees posit that what review is required after a student is placed in a DAEP does not implicate the United States Constitution. *See Nevares*, 111 F.3d at 27 (noting that the Court would not aid matters by relegating a state issue to the realms of federal litigation).

Under the Texas Education Code, when a student "engages in conduct punishable as a felony" on school property, the student "shall" be removed to the school district's DAEP.[44] In accordance with the Texas Education Code, HEB ISD assigned C.C. to a DAEP for sixty school days as a result of his conduct that occurred on school property. (ROA.163). In conjunction with the Texas Education Code, the Texas Code of Criminal Procedure provides for various notices to a school district when one of its students is, *inter alia*, arrested or convicted of certain crimes, as well as when a student assigned to a DAEP is not prosecuted.[45]

As such, the Cripps argue that "the Texas Legislature clearly wanted to [sic] school district to know quickly that [] a student, who was initially charged with a felony, was not going to be prosecuted" so that the school district could "respond accordingly." (Appellants' Brief, ¶68). The Cripps assert that HEB ISD "made no attempt to address this changing circumstance." (Appellants' Brief, ¶68). The Texas Education Code, however, does not require school districts to reassess a student's assignment to a DAEP for conduct occurring on campus upon receipt of a notice under article 15.27(g).[46] In fact, removal to a DAEP for on campus conduct is specifically exempted from the review requirement.[47] In short, the Cripps have

---

[44] TEX. EDUC. CODE § 37.006(a)(2)(A).
[45] TEX. CODE. CRIM. PROC. art. 15.27(a)-(b), (g).
[46] TEX. EDUC. CODE § 37.006(h).
[47] *Id.* at § 37.006(k). In contrast, a school district must review a DAEP assignment for conduct occurring off campus, which effectively disposes of the Cripps' argument that "there is no remedy for a student" accused of a crime, but not charged. *Id.* at § 37.006 (h). Regardless, the

not identified any liberty or property interest entitled to due process protections. The Court should affirm the district court's dismissal of the Cripps' claims under the Due Process Clause accordingly.

> ### B. The Cripps cannot maintain a substantive due process claim absent a recognized liberty or property interest.

To support their substantive due process claim, the Cripps argue that school personnel "participated in a conspiracy to remove C.C. from school" and that such conduct was "arbitrary and egregious."[48] (Appellants' Brief, ¶72). In making this argument, the Cripps miss an important step in the analysis—before determining whether governmental action was "arbitrary and egregious" such that it "shocks the conscience," the Cripps must first identify a liberty or property interest of which they were deprived.[49] As discussed above in section IV.A., which is incorporated as if set forth fully herein, the Cripps have not identified any liberty or property interest entitled to due process protections, which effectively extinguishes any substantive due process claim.

---

Cripps' rape analogy is inapposite because a student who raped another student on school property would be expelled—not assigned to DAEP—which implicates a student's due process rights. *Id.* at § 37.007(a)(2)(A).

[48] Neither Charles Cripps nor Kristie Cripps assert that their individual right to substantive due process right was violated.

[49] *Brennan*, 834 F.2d at 1257 (stating that a substantive due process violation "occurs only when the government deprives someone of liberty or property; or, to use the current jargon, only when the government works a deprivation of a constitutionally protected interest"); *Conroe Creosoting Co. v. Montgomery County, Tex.*, 249 F.3d 337, 340-41 (5th Cir. 2001) (noting that the guarantee of substantive due process has been applied to governmental deprivation of an individual's life, liberty, or property); *Anderton v. Tex. Parks & Wildlife Dep't*, 605 Fed. App'x 339, 345-46 (5th Cir. 2015) (recognizing that a plaintiff must first establish a recognized property right before determining whether the deprivation "shocks the conscience").

Nevertheless, the Cripps appear to assert for the first time on appeal that C.C. can maintain a substantive due process claim for a violation of his constitutional right to bodily integrity. (Appellants' Brief, ¶75). Setting aside this issue, the factual allegations in the First Amended Complaint do not support a violation of C.C.'s constitutional right to bodily integrity. In fact, the First Amended Complaint is devoid of any allegations that the District, Principal Hurbough, or Assistant Principal Emery inflicted any bodily injury on C.C.[50]

The Cripps also attempt to categorize Appellees' alleged actions as more egregious than the fabrication of a child's sexual abuse at the hands of her father.[51] (Appellants' Brief, ¶¶72-74). In *Morris*, the plaintiffs alleged that the defendant used a highly controversial communication device to concoct a story of child abuse.[52] The Cripps gloss over the actual facts of the case by stating that the defendant perceived that the child was being abused by her father and that this belief was misguided. (Appellants' Brief, ¶74). In reality, the plaintiffs alleged that the defendant guided the child's hand in using the communication device, which resulted in the child making an outcry.[53] While the Cripps might believe that the alleged actions of Appellees are "more egregious" than the Cripps' spin on the facts

---

[50] *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451-52 (5th Cir. 1994) (finding that sexual abuse of a student violated the student's constitutional right to bodily integrity); *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305 (5th Cir. 1987) (finding that lashing a child to a chair for two school days violated the student's constitutional right to bodily integrity).
[51] *See Morris v. Dearborne*, 181 F.3d 657 (5th Cir. 1999).
[52] *Id.* at 668.
[53] *Id.*

presented in *Morris*, a review of the case reveals that Appellees' alleged actions pale in comparison and certainly do not "shock the conscience." Given the foregoing, the Court should affirm the district court's dismissal of the Cripps' claims under the Due Process Clause.

## V.     The district court did not err in dismissing the Cripps' equal protection claims.

The Equal Protection Clause of the Fourteenth Amendment provides that the state shall not "deny to any person within its jurisdiction the equal protection of the laws."[54] To establish an equal protection claim, a plaintiff must typically plead facts tending to show that a state actor intentionally discriminated against him because of his membership in a protected class.[55] The Supreme Court, however, has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[56] But while the Equal Protection Clause ensures that similarly situated individuals are treated alike, it does not ensure absolute equality.[57]

The Cripps assert that they "brought forward allegations that other students who also allegedly committed felonies and intruded on a person's privacy or acted

---

[54] U.S. Const. amend. XIV, § 1.
[55] *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999).
[56] *Vill. of Willowbrok v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).
[57] *Ross v. Moffitt*, 417 U.S. 600, 609, 612 (1974).

33

without their consent, were treated differently than [C.C]."[58] (Appellants' Brief, ¶79). A review of the Cripps' factual allegations reveals otherwise as none of the individuals the Cripps identify are similarly situated to C.C. in that none of the students invaded another student's privacy by taking a picture of that student in a compromising position in the bathroom that could then be instantaneously shared through social media and text messaging.[59] While the Cripps assert that "another student who had also taken pictures of R.L. in the bathroom, a felony, was not punished at all," their citation to the Record on Appeal does not support their contention.[60] (Appellants' Brief, ¶79).

The First Amended Complaint actually alleges that Assistant Principal Emery followed-up on "new evidence that another student was in the bathroom at the same time as C.C. who also took pictures of R.L." (ROA.163). The Cripps' factual allegations are silent as to whether the District found that the other student took pictures of a student using the bathroom and, if so, whether and how the

---

[58] Neither Charles Cripps nor Kristie Cripps assert that their right to equal protection was violated by Appellees.

[59] *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (noting that the Equal Protection Clause "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike"); *Kyles v. Garrett*, 222 Fed. App'x 427, 429 (5th Cir. 2007) (affirming dismissal of prisoner's equal protection claim because aside from "conclusional allegations that others similarly situated ha[d] been granted parole . . . [he] offer[ed] no specific factual support for his assertions."); *Preston v. Hilton Cent. Sch. Dist.*, 876 F. Supp. 2d 235, 244 (W.D.N.Y. 2012) (dismissing male student's equal protection claim for failure to state "facts identifying similarly-situated students or describing the treatment of female complainants by the defendants in like circumstances.").

[60] The Cripps' argument implicitly acknowledges that C.C. engaged in felony conduct when taking pictures of R.L. in the bathroom.

student was punished. "[W]hen a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."[61] Moreover, "[i]t is not . . . proper to assume that [the Cripps] can prove facts that [they have] not alleged."[62] In other words, the Cripps' eleventh hour attempt to save their equal protection claim with a fact never before pled should be disregarded by the Court.[63]

The Cripps also assert that the comparators they identified are similarly situated to C.C. because the students all engaged in felony conduct. A review of the conduct in question, however, reflects misdemeanor conduct at most. To that end, stabbing another student with a pencil and hitting another student with a musical instrument constitute assault, which is punishable as a misdemeanor.[64] Likewise, a student having traces of marijuana on his person is punishable as a misdemeanor, as is the possession of drug paraphernalia.[65] The possession of a

---

[61] *Puente v. Ridge*, 324 F. App'x 423, 428 (5th Cir. 2009) (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976)).

[62] *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[63] While the Cripps' Second Amended Complaint is not before the Court, it bears noting that the Cripps still failed to plead that the other student who allegedly took pictures in the bathroom was not punished. The closest the Cripps come is alleging that Principal Hurbough told the Office of Civil Rights that HEB ISD did not "file charges against the other student." (ROA.545). If the Cripps had personal knowledge of the alleged failure to punish a similarly situated student, it seems fair to assume that they would have pled that fact. *Puente*, 324 F. App'x at 428.

[64] TEX. PENAL CODE §§ 22.01(a)(2), (b). A plain reading of the statute reveals that neither of these actions contains the necessary factors to enhance the assault from a misdemeanor to a felony.

[65] TEX. HEALTH & SAFETY CODE §§ 481.121(b)(1), 481.125 (d). The Cripps citation to "Texas Penal Code 37.007(a)(3)" does not exist. Appellees presume the Cripps intended to cite to

knife becomes a felony only if it is an "illegal knife" as the Texas Penal Code defines that term.[66] Regardless, the mere fact that two students engaged in misconduct does not automatically render them similarly situated for purposes of an equal protection claim. This is particularly true when C.C. is the only individual identified by the Cripps that invaded another student's privacy by taking pictures of that student while he was using the bathroom.

Even assuming that the Cripps' identified comparators are similarly situated, the Cripps failed to allege any facts that would establish that there was no rational basis for the differences in treatment. With the advent of social media and the prevalent use of text messages to communicate, Appellees could posit numerous rational bases for the need to take C.C.'s conduct seriously and respond accordingly. The district court did not err in dismissing the Cripps' equal protection claims. The Court should affirm the dismissal accordingly.

## VI.   The Cripps failed to plead sufficient allegations supporting municipal liability under 42 U.S.C. § 1983.

Even if the Cripps pled facts sufficient to establish their due process and equal protection claims, which Appellees do not concede, the Cripps' claims against HEB ISD still fail as they failed to establish municipal liability.[67]

---

section 37.007 of the Texas Education Code, which only addresses expulsion for serious offenses—not whether an offense constitutes a felony. TEX. EDUC. CODE § 37.007.

[66] TEX. PENAL CODE §§ 46.01(6), 46.02 (b), 46.03 (a), (g).

[67] *Collins*, 503 U.S. at 121.

Municipal liability ensures that a municipality is not held liable under 42 U.S.C. § 1983 under a theory of *respondeat superior* for the actions of its employees.[68] In order to establish municipal liability, the Cripps must allege facts tending to show that (1) the alleged constitutional violation was caused as the direct result of the execution of an official "custom" or "policy;" (2) the custom or policy was approved or sanctioned by the District's final policymaker; (3) the final policymaker acted with deliberate indifference; and (4) the custom or policy was the "moving force" behind the violation.[69]

In other words, the Cripps must plead facts tending to show that the District's Board of Trustees adopted an official policy, practice, or custom that caused the Cripps' injuries, which was adopted with "deliberate indifference" to its known or obvious consequences.[70] The policy or custom allegedly adopted by the District must be the "moving force" behind the constitutional violation such that there is a direct causal link between the alleged policy and the claimed constitutional injury.[71] The Cripps' First Amended Complaint is devoid of factual allegations identifying the existence of any policy, practice, or custom adopted with deliberate indifference by the HEB ISD Board of Trustees that was the

---

[68] *Id.* ; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

[69] *Board of County Comm'rs of Bryan County, Okla. v. Brown,* 520 U.S. 397, 403-04 (1997)

[70] *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998); *Teal v. City of Houston*, 523 F. Supp. 2d 555, 563 (S.D. Tex. 2007).

[71] *Snyder*, 142 F.3d at 795; *Teal*, 523 F. Supp. 2d at 563; *Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1989).

moving force behind the Cripps' alleged constitutional injuries.

Instead of identifying policies, practices, or customs adopted by the HEB ISD Board of Trustees that allegedly violated their constitutional rights, the Cripps plead that the District's employees did not follow "school board policies" in regard to the treatment of C.C. (ROA.172-173). Attempting to hold HEB ISD liable for its employees' alleged violations of the District's policies is the epitome of *respondeat superior* liability, which is not permitted in claims asserted under 42 U.S.C. § 1983. Instead, the Cripps have to plead facts tending to give rise to municipal liability on the part of HEB ISD, which they simply failed to do.

In fact, in responding to the District's Motion to Dismiss, the Cripps failed to brief HEB ISD's argument that the Cripps failed to establish municipal liability, focusing instead solely on their claims under Section 504. (ROA.510-517). While the Cripps raise the issue of municipal liability on appeal, their argument in this regard was relegated to a cursory footnote wherein they argue that the HEB ISD Board of Trustees delegated disciplinary decisions to Principal Hurbough and Assistant Principal Emery. (Appellants' Brief, ¶80 n.23). This argument fails to save their claims as it is well established in the Fifth Circuit that a school district's board of trustees is its final policymaker.[72] Absent the identification of an official policy, practice, or custom adopted by the Board of Trustees with deliberate

---

[72] *See* TEX. EDUC. CODE §§ 11.051 & 11.151; *Gonzalez v. Ysleta Indep. Sch. Dist.,* 996 F.2d 739, 753-54 (5th Cir. 1993).

indifference that caused their alleged injuries, the Cripps' due process and equal protection claims against HEB ISD fail. The Court should affirm the district court's dismissal.

## VII. Scott Hurbough and Damon Emery are entitled to qualified immunity from the Cripps' due process and equal protection claims.

Qualified immunity shields government officials performing discretionary functions from liability for suits brought against them in their individual capacities unless their conduct violates "clearly established" constitutional or statutory rights of which a reasonable person would have known.[73] Qualified immunity requires a two step analysis—the Court must first ascertain whether a plaintiff has alleged a violation of a clearly established constitutional right.[74] If the answer is no, the inquiry ends as the official is entitled to qualified immunity; if the answer is yes, the Court must then determine whether the defendant's conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident.[75]

---

[73] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).

[74] *Williams v. Kaufman Cty.*, 352 F.3d 994, 1002 (5th Cir. 2002); *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004).

[75] *Linbrugger*, 363 F.3d at 540. The district court noted that it agreed with Principal Hurbough and Assistant Principal Emery that the allegations in the Cripps' First Amended complaint were insufficient to overcome their qualified immunity defenses. Nevertheless, the district court did not discuss the subject further given its other rulings. While the Cripps did not address qualified immunity in their brief to this Court, Principal Hurbough and Assistant Principal Emery reurge their qualified immunity defenses.

## A.    The Cripps do not allege a violation of a clearly established constitutional right.

For the purposes of the qualified immunity test, a constitutional right is clearly established when it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[76] The law in question must have been clearly established not only in general or abstract terms, but in a highly particularized sense that is relevant to the facts of the particular case.[77] Whether a legal rule is clearly established "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified."[78] If a plaintiff were allowed to assert "extremely abstract rights" in a general manner, the rule of qualified immunity would be converted "into a rule of virtually unqualified liability."[79]

Before a violation can be shown to be clearly established, the right allegedly violated must be narrowly defined.[80] The right alleged to have been violated must be clearly established "in a more particularized, and hence more relevant, sense: the contours of the right must be sufficiently clear that a reasonable official would

---

[76] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (citations omitted).

[77] *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (noting that "in the light of pre-existing law the unlawfulness must be apparent").

[78] *Id.*

[79] *Id.*

[80] *See, e.g.,id.* at 640-41 (finding that "the right to be free from warrantless searches" was too general for qualified immunity analysis); *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (noting that "abstract rules" such as prohibitions on denying due process or inflicting cruel and unusual punishment give officials little practical guidance as to the legality of particular conduct); *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998) (finding that the "right not to be arrested without probable cause" does not satisfy the first prong of the qualified immunity test).

understand that what he is doing violates that right."[81]

The Cripps have asserted two claims against Principal Hurbough and Assistant Principal Emery—a violation of their rights under the Due Process Clause and a violation of their rights under the Equal Protection Clause. With respect to their due process claims, the Cripps have made clear that it is predicated on the failure to assess C.C.'s DAEP assignment following the decision by the Juvenile Justice Authorities to not prosecute. (Appellants' Brief, ¶67). The Cripps have not shown that the law on this issue is clearly established in the highly particularized sense relevant to the facts of this case such that a reasonable official would understand that failing to reassess C.C.'s DAEP assignment would violate their constitutional rights.

In addition, the Cripps' "class of one" equal protection claim is not a clearly established constitutional right in the Fifth Circuit.[82] The Cripps assert that C.C. was "treated more harshly by both [Principal] Hurbough and [Assistant Principal] Emery than other students who were similarly situated." (Appellants' Brief, ¶77). As discussed above, the individuals identified by the Cripps as "similarly situated" were students who engaged in what the Cripps characterized as felony conduct. The Cripps have not shown that the law on this issue is clearly established in the

---

[81] *Anderson*, 483 U.S. at 640.

[82] *See Doe v. Dantin*, No. 11-467, 2014 WL 2045344, at *6 (E.D. La. May 16, 2014) (noting that while "the Supreme Court has recognized a "class of one" claim, the Fifth Circuit has primarily confined this right to the land use and assessment context").

highly particularized sense relevant to the facts of this case such that a reasonable official would understand that every student who engages in misconduct must be treated the same. As such, Principal Hurbough and Assistant Principal Emery are entitled to qualified immunity on the Cripps' due process and equal protection claims.

### B. The Cripps have not alleged that the actions of Principal Hurbough and Assistant Principal Emery were objectively unreasonable.

If the Court finds that Plaintiffs' Complaint alleges a violation of a clearly established constitutional right, then the next inquiry is whether Principal Hurbough and Assistant Principal Emery's alleged actions were objectively unreasonable. An official's conduct is considered objectively reasonable "unless all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution."[83] An official is eligible for qualified immunity even if the official violated another's constitutional rights; it is only if the violation was clearly unreasonable that the official will be divested of qualified immunity.[84] Declining to reassess a student's assignment to DAEP for conduct occurring on school property is not clearly unreasonable. Likewise, declining to punish every student who engages in misconduct in the same manner is not clearly unreasonable particularly when the conduct differs, as do the students' past

---

[83] *Gates*, 537 F.3d at 419.

[84] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).

behavioral infractions. As such, the Cripps' allegations do not overcome Principal

Hurbough and Assistant Principal Emery's entitlement to qualified immunity.

## VIII. The district court did not err in dismissing the Cripps' claims under Section 504 of the Rehabilitation Act.

Section 504 provides that "[n]o otherwise qualified individual with a

disability . . . shall, *solely by reason of [] his disability*, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under

any program or activity receiving Federal financial assistance."[85] In order to

recover compensatory damages under Section 504, a plaintiff must make a

showing of intentional discrimination.[86] One way to establish a Section 504 claim

is to allege that a "school district has *refused* to provide reasonable

accommodations for the handicapped plaintiff to receive the full benefits of the

school program."[87] This Court has determined that to establish a Section 504 claim

"in *this educational context*, 'something more than a mere failure to provide [a free

appropriate public education ("FAPE") under the IDEA] must be shown.'"[88] As

such, when a plaintiff's claim arises "in this educational context" (*i.e.*, it is

predicated on a disagreement over compliance with the IDEA), "facts creating an

---

[85] 29 U.S.C. § 794(a) (emphasis added).
[86] *See Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002); *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010).
[87] *Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 990 (5th Cir. 2014) (quoting *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983)) (emphasis in original).
[88] *D.A.*, 629 F.3d at 454 (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)) (emphasis added); *Lance*, 743 F.3d at 992.

inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under [Section] 504."[89]

Alleging that a school district "refused" to provide reasonable accommodations to a student (*i.e.*, a disagreement over compliance with the IDEA) is not the only avenue to pursue a cause of action against a school district under Section 504.[90] For example, even if there was no dispute over a school district's satisfaction of its obligations under the IDEA, a student could still "'pursue claims under the ADA and [Section 504] on the grounds that [the student] was precluded from receiving a state benefit . . . provided to her non-disabled peers.'"[91] In *Lance*, this Court recognized a Section 504 claim stemming from disability-based harassment before ultimately determining that summary judgment in favor of the school district was appropriate.[92]

Turning to the Cripps' claims, HEB ISD readily admits that it is not certain

---

[89] *D.A.*, 629 F.3d at 454-55. In choosing the nuanced words of "professional bad faith or gross misjudgment," this Court has left district courts without clear guidance as to what "professional bad faith or gross misjudgment" means. Section 504, like Title IX, is Spending Clause legislation, and, as such, damages are not available to remedy a violation absent intentional discrimination. *See Barnes v. Gorman*, 536 U.S. 181, 185-188 (2002); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998); *Liese v. Indiana River County Hosp. Dist.*, 701 F.3d 334, 346-47 (11th Cir. 2012). Intentional discrimination requires proof of at least "deliberate indifference." *Gebser*, 524 U.S. at 290. Every circuit to address the issue of what constitutes the proper standard for damages under Section 504 has adopted the "deliberate indifference" standard. *Liese*, 701 F.3d at 345 (compiling cases). HEB ISD urges this Court to do the same to the extent that it is appropriate to do so in this case.

[90] *Lance*, 743 F.3d at 993 (noting that Section 504 claims can be predicated on other theories of liability—not just a disagreement over compliance with the IDEA) (citing *K.M. v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013)).

[91] *Id.* (quoting *Ellenberg v. N.M. Military Inst.*, 478 F.3d 1262, 1282 (10th Cir. 2007)).

[92] *Id.* at 995-1001.

how the Cripps believe that the District violated Section 504 as its briefing to the Court on this issue is convoluted at best. The District is not even certain whether the Cripps' Section 504 claim is predicated on a disagreement over compliance with the IDEA. HEB ISD's confusion is understandable given that the Cripps' briefing is essentially lifted almost verbatim from a vacated Fifth Circuit opinion— citations and all—with little to no analysis as to how the case law contained therein applies to the Cripps' claims.[93]

While the Cripps appear to rely on the "professional bad faith or gross misjudgment" standard to establish their Section 504 claim, the Cripps do not argue that HEB ISD failed to provide C.C. with a FAPE in accordance with Section 504's regulations; rather they focus on HEB ISD's "refusal" to respond to C.C.'s "changing circumstances" (*i.e.*, the Juvenile Justice Authority's decision not to prosecute C.C.) and an alleged conspiracy to remove C.C. from school. (Appellants' Brief, ¶¶86, 88-89). The Cripps' claim under Section 504 arises in the "educational context" only in the strictest sense—they are asserting a claim against a school district on behalf of one of the school district's students. Absent a disagreement over compliance with the IDEA, the "professional bad faith or gross

---

[93] *Compare* Appellants' Brief, ¶¶84-85 *with Stewart v. Waco Indep. Sch. Dist.*, 711 F.3d 513, *vacated by* 599 Fed. App'x 534 (5th Cir. 2013).

45

misjudgment" standard does not apply.[94]

Thus, the current iteration of the Cripps' Section 504 claim fails because they have not tied any of the actions asserted against the District—the "refusal" to address C.C.'s "changing circumstances" or the conspiracy to remove C.C. from school—to any of C.C.'s disabilities. Section 504 requires intentional discrimination *solely* because of a disability. As the district court recognized, "aside from a conclusory allegation that the above described activities were undertaken due to his disability, there are no underlying factual allegations to support such a statement." (ROA.687). Merely saying that C.C. was discriminated against because of his disability—without more—does not suffice to overcome HEB ISD's Motion to Dismiss.

The Cripps' Section 504 claim meets the same fate when analyzed under the "professional bad faith or gross misjudgment" standard, assuming *arguendo* that this is the proper standard. It appears that the Cripps are arguing that the District's failure to address C.C.'s "changing circumstances" (*i.e.*, the Juvenile Justice Authority's decision to not prosecute C.C.) constitutes a "refusal" actionable under Section 504 as HEB ISD failed "to exercise professional judgment in response" to the changing circumstances. (Appellants' Brief, ¶¶86, 88). Setting aside the failure

---

[94] *See A.P. ex rel. Peterson v. Anoka-Hennepin Sch. Dist. No. 11*, 538 F. Supp. 2d 1125, 1146-47 (D. Minn. 2008) (explaining that the bad faith or gross misjudgment requirement should not apply outside the IDEA context).

to tie the District's alleged "refusal" to consider C.C.'s "changing circumstances" back to his disabilities, HEB ISD fails to see how the Juvenile Justice Authority's decision to not prosecute C.C. for his conduct bears any relation to C.C.'s disabilities or constitutes the refusal to grant an accommodation giving rise to an actionable Section 504 claim.

What the Cripps overlook in making this argument is that C.C.'s assignment to the DAEP was based on conduct that was not a manifestation of C.C.'s disability.[95] There was no literal "refusal" to provide C.C. with reasonable accommodations as the IDEA provides that a school district is authorized to apply its disciplinary procedures "in the same manner and for the same duration in which the procedures would be applied to children without disabilities."[96] Moreover, the Cripps can hardly establish that HEB ISD's decision to not reevaluate its disciplinary decision (*i.e.*, C.C.'s assignment to the DAEP) constitutes "professional bad faith or gross misjudgment" when not even state law requires the District to take such action for conduct occurring on school property.[97]

The Cripps' First Amended Complaint is also devoid of any factual allegations that C.C. did not receive the full benefits offered by the District during his assignment to the DAEP. Moreover, while the Cripps characterize Principal

---

[95] It is important to note that the Cripps no longer challenge HEB ISD's determination that C.C.'s conduct in taking pictures of another student using the bathroom was not a manifestation of his disabilities. *See C.C.*, 2015 WL 2443835, at *5, 8.
[96] 20 U.S.C. § 1415(k)(1)(C).
[97] TEX. EDUC. CODE §§ 37.006(a)(2)(A), (h), (k); TEX. CODE. CRIM. PROC. art. 15.27(g).

Hurbough and Assistant Principal Emery's alleged actions of engaging in a conspiracy to remove C.C. from school as a "gross deviation from their professional standards of care," the Cripps still fail to bring forth facts tying this "gross deviation" back to C.C.'s disabilities or a disagreement over compliance with the IDEA. The fact that Principal Hurbough and Assistant Principal Emery allegedly engaged in a conspiracy against C.C. does not establish an actionable Section 504 claim simply because C.C. has disabilities. The district court did not err in dismissing the Cripps' Section 504 claim. This Court should affirm the dismissal accordingly.

## IX.    The district court did not err in dismissing the Cripps' claims under Section 504 of the Rehabilitation Act predicated on a hostile educational environment.

The Cripps assert that if Principal Hurbough and Assistant Principal Emery were mistreating C.C. because of his behaviors and, in turn, C.C.'s behaviors were caused by his disabilities, then Principal Hurbough and Assistant Principal Emery were effectively discriminating against C.C. because of his disability thereby creating a hostile educational environment in violation of Section 504.[98] Stated another way, the Cripps essentially assert that students with disabilities are not subject to discipline in a school setting as that creates a hostile educational

---

[98] The Cripps also assert that C.C. "was not afforded the same type of education environment as his non-disabled peers, and was thus a victim of discrimination based upon his disability." (Appellants' Brief, ¶94). Setting aside the fact that this appears to be the first time the Cripps make this allegation, the First Amended Complaint is devoid of any facts establishing how C.C.'s non-disabled peers were treated.

environment. Section 504 does support such a claim as it requires intentional discrimination against a student *solely* because of that student's disability.[99] As the district court noted, the Cripps' First Amended Complaint is devoid of any allegations that HEB ISD took any actions against C.C. *solely* because of his disabilities.[100]

The first action in the alleged conspiracy to remove C.C. from school involved an incident between C.C. and Ms. McNosky wherein they collided and Ms. McNosky filed charges against C.C. (ROA.157-159). The collision, according to the Cripps, certainly was not caused by C.C.'s behaviors. But there are also no factual allegations that Ms. McNosky initiated the contact with C.C. *solely* because of his disabilities. The Cripps' remaining allegations giving rise to a hostile educational environment all stem from the District's disciplinary actions in response to C.C.'s behaviors.[101] (ROA.158-161). The Cripps argue, however, that stating C.C. was punished for his behaviors caused by his disabilities "is akin to saying that 'we didn't punish Johnny for having cerebral palsy, we punished [him]

---

[99] 29 U.S.C. § 794(a); *Delano-Pyle*, 302 F.3d at 574; *D.A.*, 629 F.3d at 454.

[100] HEB ISD also notes that while the Cripps allege that C.C. "was not afforded the same type of education environment as his non-disabled peers," he has not identified any comparators for the Court such that the Court could determine whether the Cripps have pled a plausible claim. (Appellants' Brief, ¶94).

[101] The Cripps also allege several other "hostile" actions such as mischaracterizing evidence to the Office of Civil Rights and failing to reassess C.C.'s DAEP assignment. Again, aside from conclusory statements, the Cripps have not pled facts establishing that the District discriminated against C.C. solely because of his disabilities as there are no factual allegations tying the alleged actions and C.C.'s disabilities together.

because he couldn't walk in a straight line." (Appellants' Brief, ¶93). The Cripps' analogy misses the mark.

The Cripps specifically assert that the conspiracy to remove C.C. from school "led to a loss and denial of benefits as to C.C., [namely] the deprivation of the regular educational environment and services to which he justly deserved." (Appellants' Brief, ¶96). When a student engages in behavior that results in placement in a DAEP (*i.e.*, "the deprivation of the regular educational environment"), the IDEA provides for an MDR in order to determine whether the student's behavior resulted from his disabilities.[102] Turning to the Cripps' absurd analogy, that means if failing to walk in a straight line violated the student code of conduct resulting in a long term DAEP placement, then an MDR would be held where it would be determined that Johnny's inability to walk in a straight line was a manifestation of his disability, and he would remain in the regular educational environment.[103]

The mere fact that C.C. has disabilities does not turn every action the District took with respect to C.C. into disability discrimination. What the Cripps seem to overlook in their entire brief is the serious nature of the conduct in which C.C. engaged—he took pictures of another student using the bathroom and kept the

---

[102] 20 U.S.C. § 1415(k).
[103] *Id.* at § 1415(k)(1)(F).

pictures on his cell phone.[104] It was for this reason—and this reason alone—that C.C. was assigned to the DAEP and, in the Cripps' words, "depriv[ed] of the regular educational environment." (Appellants' Brief, ¶96). C.C.'s MDR committee determined that C.C.'s conduct was not a manifestation of his ADHD or other disabilities. (ROA.163). C.C. does not challenge this finding.[105] The district court properly dismissed the Cripps' Section 504 claim. This Court should affirm accordingly.

---

[104] A review of the Cripps' factual allegations reveal that C.C. photographed the student using the bathroom on around February 14, 2013, and that he still had the pictures on his is cell phone a week later when Assistant Principal Emery investigated the incident as evidenced by the fact that the pictures were still on C.C.'s cell phone in May 2014. (ROA.159, 168).
[105] *See C.C.*, 2015 WL 2443835, at *5, 8.

## CONCLUSION AND PRAYER

The district court's order dismissing all of the Cripps' claims should be affirmed in its entirety by this Court. The district did not abuse its discretion in denying the Cripps leave to file their Second Amended Complaint as the district court properly determined that the Cripps failed to take advantage of previous opportunities to amend, and leave would cause undue delay and would unduly burden Appellees. The district court also did not err in declining to consider the Cripps' retaliation claim under Section 504 as the Cripps did nothing more than plead facts sounding in retaliation without actually pleading such a cause of action.

The Cripps' due process claims were also properly dismissed as the Cripps failed to identify any property interest or liberty interest entitled to protection under the Due Process Clause. The Cripps' equal protection claims meet a similar fate as the Cripps failed to plead facts establishing proper comparators for C.C.'s conduct in taking pictures of another student using the bathroom. The Cripps' equal protection and due process claims also fail as the First Amended Complaint is devoid of facts suggesting municipal liability against HEB ISD, as well as devoid of facts sufficient to overcome Principal Hurbough and Assistant Principal Emery's qualified immunity.

Finally, the district court did not err in dismissing the Cripps' claims under

Section 504, including their hostile educational environment claim, as the Cripps' factual allegations do not give rise to a plausible claim that C.C. was discriminated against solely because of his disabilities. The Cripps likewise failed to plead facts giving rise to an inference that the District's employees failed to accommodate C.C. in a manner that gives rise to bad faith or gross misjudgment. Given the foregoing, Appellees respectfully pray that the Court affirms the district court's dismissal of all of the Cripps' claims against HEB ISD, Principal Hurbough, and Assistant Principal Emery.

Respectfully submitted,

By: __/s/Meredith Prykryl Walker_____
     Meredith Prykryl Walker
     State Bar No. 24056487
     Nona C. Matthews
     State Bar No. 00787982

**WALSH GALLEGOS TREVIÑO RUSSO & KYLE P.C.**
105 Decker Court, Suite 600
Irving, Texas 75062
214.574.8800
214.574.8801 (facsimile)
mwalker@wabsa.com
nmatthews@wabsa.com

*Attorneys for Defendants-Appellees*

# CERTIFICATE OF SERVICE

The undersigned certifies that on this 10th day of August, 2015, the foregoing Brief of Appellees Hurst-Euless-Bedford Independent School District, Scott Hurbough, and Damon Emery, along with an electronic copy, has been filed in the office of the Clerk for the United States Court of Appeals for the Fifth Circuit and two true and correct copies of the same along with an electronic copy was served upon the following counsel of record in accordance with the Federal Rules of Civil Procedure:

Martin J. Cirkiel                          Kenneth Carden
Cirkiel & Associates, P.C.                 Carden Law Office
1901 E. Palm Valley Boulevard             1409 S. Lamar Street, Apt. 601
Round Rock, Texas 78664                    Dallas, Texas 75215


/s/ Meredith Prykryl Walker
Meredith Prykryl Walker

## CERTIFICATE OF PRIVACY REDACTIONS AND VIRUS SCANNING

The undersigned certifies that: (1) all required privacy redactions have been made in this brief, in compliance with 5TH CIR. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, in compliance with 5TH CIR. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ Meredith Prykryl Walker
Meredith Prykryl Walker

Dated:      August 10, 2015

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,964 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010, Times New Roman, font size 14 for text and font size 12 for footnotes.

/s/ Meredith Prykryl Walker
Meredith Prykryl Walker

Dated:      August 10, 2015